UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SAFETY NATIONAL CASUALTY
CORPORATION,

                              Plaintiff,           **MEMORANDUM & ORDER**

 - against -                                      2:21-cv-2023 (DRH) (ARL)

FLOOR AND DECOR OUTLETS OF
AMERICA, INC.,

                              Defendant.
----------------------------------------------------------------X

**APPEARANCES**

**STONBERG MORAN, LLP**
Attorneys for Plaintiff
505 Eighth Avenue, Suite 2303
New York, NY 10018
By:    Sherri N. Pavloff, Esq.

**KILPATRICK, TOWNSEND & STOCKTON, LLP**
Attorneys for Defendant
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
By:    Brent W. Brougher, Esq.
        Joe Reynolds, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiff Safety National Casualty Corporation ("SNCC") brings this insurance coverage action against Floor and Decor Outlets of America, Inc. ("F&D") seeking (1) a declaratory judgment that SNCC is not obligated to defend or indemnify F&D in *RVC Floor Décor, Ltd. v. Floor and Décor Outlets of America, Inc.*, No. 2:18-cv-6449 (DRH) (ARL) ("Suit 1"), (2) to recover defenses costs and fees incurred in defending F&D in Suit 1 since March 18, 2021, (3) a declaratory judgment that SNCC is entitled

to recover defense costs and fees incurred in defending F&D in *RVC Floor Décor, Ltd. v. Floor and Décor Outlets of America, Inc.*, No. 19-cv-4894 (DRH) (ARL) ("Suit 2"), should F&D win attorney's fees in that case, and (4) to recover money damages for the attorney's fees F&D recovers in Suit 2.

Presently before the Court are SNCC's motion and F&D's cross-motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons stated below, SNCC's motion is denied and F&D's cross-motion is granted.

## BACKGROUND

SNCC, a Missouri insurance corporation with a principal place of business in Missouri, issued five commercial general liability policies to F&D, a Georgia corporation operating in many states including New York. Compl. ¶¶ 1–4, 19–23 [DE 1]. Under each policy, SNCC covers F&D for "personal and advertising injury," contractually defined as "injury . . . arising out of," among other conduct, "[i]nfringing upon another's copyright, trade dress or slogan in [its] 'advertisement.'" *Id.* ¶¶ 24–26; *see* Insurance Policies, Exs. 6–10 [DEs 1-6 to -10] to Compl. The policies provide worldwide coverage with certain exceptions and require SNCC to pay sums that F&D becomes legally obligated to pay as damages from covered personal and advertising injuries. *E.g.*, [DE 1-6] at 42, 143. SNCC has "the right and duty to defend to [F&D] against any 'suit' seeking those damages." *Id.*

F&D, a retailer of flooring products, opened a store in Farmingdale New York in November 2018. Compl. ¶ 13. On November 13, 2018, RVC Floor Decor Ltd. ("RVC")—a seller of carpet, vinyl and hard surface flooring for purchase and

installation—filed Suit 1 against F&D, alleging, among other causes of action, trademark infringement in violation of the Lanham Act. *Id.* ¶¶ 10–11. SNCC agreed to defend F&D in Suit 1 on January 25, 2019, reserving the right "to withdraw from [F&D's] defense should there be no obligation to indemnify" F&D. *Id.* ¶¶ 28–29.

On August 27, 2019, RVC filed another trademark infringement action against F&D, Suit 2, premised upon F&D's actions since July 1, 2019. *Id.* ¶¶ 14–16. SNCC agreed to defend F&D in Suit 2 on November 14, 2019, reserving the same right as in Suit 1, the right to "withdraw from [F&D's] defense should there be no obligation to indemnify" F&D. *Id.* ¶¶ 30–31. The Court dismissed Suit 2 on September 24, 2020, and, on December 24, 2020, F&D moved to recover attorney's fees and costs expended therein. *Id.* ¶¶ 17–18. On September 10, 2021, the Court adopted the Report and Recommendation of Magistrate Judge Arlene R. Lindsay and denied F&D's motion for attorney's fees. *See* Order, Suit 2 [DE 31].

On March 18, 2021, this Court granted in part and denied in part F&D and RVC's motions for summary judgment in Suit 1. *Id.* ¶ 13.[1] As relevant here, the Court granted F&D's motion to preclude RVC from recovering compensatory damages because RVC denied seeking such damages. *Id.* RVC instead sought disgorgement of "all profits wrongfully derived by" F&D, and, in distancing that remedy from compensatory damages, argued that "disgorgement of profits is not compensatory in nature." *Id.* Understanding RVC to pursue disgorgement "solely for deterrence

---

[1] The decision is published as *RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc.*, 527 F. Supp. 3d 305 (E.D.N.Y. 2021). This decision is referring hereinafter as the "March 18, 2021 Order."

purposes," F&D moved to preclude RVC from recovering disgorgement, arguing RVC failed to show F&D's infringement was willful. *Id.* The Court denied this portion of F&D's motion. *Id.*

On March 26, 2021, SNCC withdrew from F&D's defense in Suit 1 because, in its reading of the March 18, 2021 Order, it no longer had an obligation to indemnify F&D. *Id.* ¶ 32. Likewise, SNCC took the position that F&D owed SNCC any attorney's fees recovered in Suit 2. *Id.* ¶ 33. F&D objected on April 2, 2021. *Id.* ¶ 34. SNCC ultimately relented with respect to Suit 1, re-assuming F&D's defense and reserving the right to seek a declaration as to its coverage obligations and to recover defense costs. *Id.* ¶¶ 35–37.

SNCC filed the instant action on April 15, 2021. [DE 1]. It seeks four forms of relief: (1) a declaration as to whether SNCC owes defense and indemnification duties to F&D in Suit 1 and, if so, under which policies; (2) money damages in the amount of defense costs and fees paid in Suit 1 since March 18, 2021 if SNCC has no obligation to defend F&D therein; (3) a declaration as to whether SNCC is entitled to recover amounts incurred in defending F&D in Suit 2 if F&D wins attorney's fees therein; and (4) money damages for the attorney's fees F&D recovers in Suit 2. Compl. ¶ 7. F&D answered on June 28, 2021. [DE 27].

On the same day, F&D filed suit against SNCC in the United States District Court for the Northern District of Georgia, which has since been transferred to this Court and consolidated with this case. *See Floor & Decor Outlets of America, Inc. v.*

*Safety National Casualty Corporation*, No. 2:21-cv-3617 (E.D.N.Y.). There, F&D brought breach of contract claims and claims for declaratory relief.

On December 3, 2021, the parties cross-moved for judgment on the pleadings. [DEs 40, 43]. SNCC's "motion is limited to [its] Third, Eighth, and Ninth Causes of Action." SNCC Opening Mem. at 1 [DE 40]. F&D's motion concerns the Third Cause of Action. F&D Opening Mem. at 15 [DE 43].

## LEGAL STANDARD

The standard for evaluating a motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), is the same as the standard for a motion to dismiss under Rule 12(b)(6). *See Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 113 (2d Cir. 2005). In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions"; thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Harris*, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*; *accord Harris*, 572 F.3d at 72.

In making its determination, the Court is confined to "the allegations contained within the four corners of [the] complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998). However, this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

## DISCUSSION

As a threshold matter, the Court must determine which state's law to apply. Once identified, the Court examines whether SNCC still has an obligation to defend F&D in light of the March 18, 2021 Order. The Court ends by addressing the remaining contentions in the parties' briefing.

### I. Choice of Law

This New York federal Court, sitting in diversity, applies the forum state's choice-of-law principles. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). Under New York law, "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *In re Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 223 (N.Y. 1993). If there is a conflict, the next step is to choose which law to apply. *Id.* at 225. The relevant jurisdictions here are New York and Georgia.

### A.     New York and Georgia Law Conflict

The parties identify two germane conflicts between New York and Georgia law.

The first concerns insurance coverage for punitive damages. The parties agree that New York forbids insurers from covering punitive damages and that Georgia permits such coverage. SNCC Mem. in Support at 10 n.3, 17 n.8 [DE 40]; F&D Opp. at 13–14 [DE 41]. The conflict is important because if New York law applies, and New York law construes Lanham Act disgorgement awards as punitive in nature, SNCC cannot provide coverage for F&D in Suit 1 and thus has no duty to defend. But under New York law, a Lanham Act disgorgement award would not be viewed as punitive. *See infra* Discussion Section I.C. Therefore, New York and Georgia's conflict over insurance coverage for punitive damages does not necessitate a choice of law analysis in this case given that the law of the two states do not differ in any material way vis-à-vis disgorgement awards.

The second concerns whether "damages," as that term is used in insurance policies, includes restitution of profits "wrongfully acquired" or "ill-gotten" from trademark infringement. New York law holds it does not. *Shapiro v. OneBeacon Ins. Co.*, 34 A.D.3d 259, 260 (N.Y. App. Div., 1st Dep't 2006); *Vigilant Ins. Co. v. Credit Suisse First Bos. Corp.*, 10 A.D.3d 528, 528–29 (N.Y. App. Div., 1st Dep't 2004) ("Restitution of ill-gotten funds does not constitute 'damages' or a 'loss' as those terms are used in insurance policies."); *Reliance Grp. Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 188 A.D.2d 47, 55 (N.Y. App. Div., 1st Dep't 1993) (orders "to return money or property that has been wrongfully acquired . . . do not award

'damages' as that term is used in insurance policies."). Georgia precedent suggests it does; and, regardless, SNCC fails to argue otherwise, thereby forfeiting any argument to that end. *See McMillian v. McMillian*, 713 S.E.2d 920, 923 (Ga. Ct. App. 2011) (if "a disgorgement remedy [is] appropriate, . . . the revenues and profits of [defendant] absolutely would be relevant to damages because they *would be the very measure of damages*." (emphasis added)); *see also* SNCC Opening Mem. at 9 (arguing that the March 21, 2021 Order "left, as damages, the disgorgement of the profits F&D allegedly earned from the alleged infringement . . . ."). Because the Supreme Court has described disgorgement awards under to the Lanham Act as winning "defendant's ill-gotten profits," *cf. Romag Fasteners, Inc v. Fossil, Inc.*, 140 S. Ct. 1492, 1494 (2020), the conflict between the laws of New York and Georgia on this issue necessitates a proper choice of law analysis.

### B.     Georgia Law Applies

New York's "analytical approach to choice of law questions in contract cases" looks at the "center of gravity" or "grouping of contacts" to determine the state with the most significant relationship to the transaction and the parties. *In re Liquidation of Midland Ins. Co.* ("*Midland*"), 16 N.Y.3d 536, 543–44 (N.Y. 2011) (internal quotation marks omitted) (quoting *Zurich Ins. Co. v. Shearson Lehman Hutton*, 84 N.Y.2d 309, 317 (N.Y. 1994)). For insurance contracts, that state is ordinarily the one "the parties understood was to be the principal location of the insured risk." *Zurich Ins. Co.*, 84 N.Y.2d at 318. Where a policy covers risks in multiple states, "the state of the insured's domicile should be regarded as a proxy for the principal location

of the insured risk." *Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.* ("*Foster Wheeler*"), 36 A.D.3d 17, 24 (N.Y. App. Div., 1st Dep't 2006), *aff'd*, 9 N.Y.3d 928 (N.Y. 2007) (affirming "for the reasons stated" by the Appellate Division); *see Midland*, 16 N.Y.3d at 544 ("We recently affirmed the Appellate Division's application of these principles in *Foster Wheeler*."); *see also Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 822 F.3d 620, 642–644 & n.25 (2d Cir. 2016) ("[U]nder New York law, the law of [the insured's] domicile governs the [insurance policy] since the policy covers risks spread across multiple states."). If a corporation is domiciled in two states—by virtue its state of incorporation differing from the state of its principal place of business—"the state of the principal place of business takes precedence" and supplies the applicable law. *Foster Wheeler*, 36 A.D.3d at 24–25.

F&D's insurance policies with SNCC includes an endorsement for worldwide coverage, and F&D operates in multiple states. *E.g.*, [DE 1-6] at 42; F&D Opening Mem. at 8 [DE 43]. Accordingly, the policy covers risk spread across multiple states. *E.g.*, *RLI Ins. Co. v. AST Eng'g Corp.*, 2022 WL 107599, at *2–3 (2d Cir. Jan. 12, 2022) (worldwide coverage and operation in at least two states triggers "domicile-as-proxy rule"). Absent an exception to the above analysis, then, the state of F&D's principal place of business—Georgia—supplies the applicable law. Compl. ¶ 3; Answer ¶ 3 [DE 27].

The above choice-of-law analysis applies "unless with respect to the particular issue, some other state has a more significant relationship . . . to the transaction and the parties." *Zurich Ins. Co.*, 84 N.Y.2d at 318 (adopting the approach in the

Page **9** of **16**

Restatement (Second) of Conflict of Laws § 193). SNCC contends that New York's policy against insurance coverage for punitive measures is one such issue giving New York the most significant relationship here. That is, because New York choice of law principles will determine whether SNCC insures F&D for (what SNCC argues is) a punitive measure arising out of F&D's activities in New York, New York State has the most significant relationship to the transaction and the parties, and its law should apply.

As set forth below, however, the Court disagrees that New York law would construe disgorgement under Lanham Act as a purely punitive measure.

### C. New York Law Would Not Construe Lanham Act Disgorgement Awards Punitive

SNCC contends a Lanham Act disgorgement award in the underlying action would be a punitive, and thus ineligible for insurance coverage, because RVC seeks no compensatory damages and only a disgorgement award "in the interests of deterrence." SNCC Opening Mem. at 11 (quoting *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 261 (2d Cir. 2014)). Stripped of any compensatory purpose, the argument goes, the disgorgement award is purely punitive.

Section 35(a) of the Lanham Act authorizes recovery of, *inter alia*, damages and disgorged profits. 15 U.S.C. 1117(a). In the underlying case, F&D cross-moved to preclude RVC's recovery of the former. Mar. 18, 2021 Order at 39–42. RVC did not oppose this portion of the cross-motion, choosing not to pursue compensatory damages under Section 35(a) and remarking that "disgorgement of profits is not compensatory in nature." *Id.*; RVC Mem. in Opp. at 12, Suit 1 [DE 137]. The Court

did not opine on the accuracy of RVC's statement beyond construing it to reflect RVC's disavowal of a compensatory damages award. *See* Mar. 18, 2021 Order at 39–42. The Court used the term "compensatory," or a derivative thereof, only to specify the remedy at issue; it did not adopt any party's view on the nature of disgorgement. *Id.* ("compensatory damages"; "compensation for its sustained damages"). RVC invoked deterrence in an effort to distance compensatory damages from disgorgement – but such an argument does not automatically transform the latter into a punitive, non-compensatory measure under New York law.

The question here involves the application of New York statutory interpretation principles to a federal statute – viz. whether New York law would construe a disgorgement award under the Lanham Act, Section 35(a) as punitive.

The New York Court of Appeals has long held that where a statute—including a federal statute—"expressly denominates an enhanced damages provision to be compensatory in nature, it will not be deemed a penalty." *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 212–13 (N.Y. 2007). In *Bogartz v. Astor* for example, the New York Court of Appeals held that a statute awarding doubled wages "cannot be conceived of as a mere pecuniary punishment" where the statute repeatedly described the award as "compensation." 293 N.Y. 563, 564–66 (N.Y. 1944). "[S]uch is the plain requirement of the statute and that is an end of the controversy." *Id.* at 566. Likewise, in *Cox v. Lykes Brothers*, Judge Cardozo wrote for the New York Court of Appeals in interpreting a federal statute and held the same: Congress "expressly said that the [doubled] compensation, when due, 'shall be recoverable as wages,'" which

"would seem decisive, without more, that . . . it is not to be classified as a penalty." 237 N.Y. 376, 378–81 (N.Y. 1924). That conclusion, he added, is reinforced by "[t]he [statute's] purpose, or at least the predominant one," notwithstanding the litigants viewpoints on the particular remedy. *See id.*

Here, Congress expressly commands Section 35(a) disgorgement awards to be "compensatory and not punitive." 15 U.S.C. § 1117(a). The plain text is clear and the Court is not free to disregard it. *Bogartz*, 293 N.Y. at 566. While *Sperry* concerned only "enhanced damages provision[s]," the principal applies equally to disgorgement provisions: because the Lanham Act expressly denominates a disgorgement award to be compensatory in nature, New York law will not deem it to be entirely penal. *See Sperry*, 8 N.Y.3d at 212–13.

The Lanham Act's purpose for construing disgorgement as compensatory was explained in *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1539 (2d Cir. 1992). "Historically, an award of defendant's profits has [] served as a rough proxy measure of plaintiff's damages." *Id.*; *Ideal World Mktg., Inc. v. Duracell, Inc.*, 997 F. Supp. 334, 338 (E.D.N.Y. 1998) ("Although profits and damages are, as a practical matter, two very different concepts . . . , it is clear from the Second Circuit's language in [*George*] *Basch* that, in the context of trademark infringement, there is a significant overlap between them."). Indeed, Congress gave courts the power to invoke "principles of equity" to adjust "inadequate or excessive" awards of this type, enabling courts to meet the "compensatory and not punitive" dictate. *See* 15 U.S.C. 1117(a).

The litigants' views—*e.g.*, RVC's contention that disgorged profits at issue served solely deterrence interests—do not overcome the Lanham Act's text and purpose.

Under New York law, then, Section 35(a) disgorgement awards are, at least in part, compensatory in nature. The New York public policy's prohibition against insurance for punitive measures—which applies to such measures imposed "solely" to punish and not to compensate or reimburse—is therefore inapplicable. *See Zurich Ins. Co.*, 84 N.Y.2d at 316.

SNCC misplaces reliance on Second Circuit observations that disgorged profits awarded in the interests of deterrence are "'not compensatory in nature.'" SNCC Opening Mem. at 11 (quoting *Merck Eprova AG.*, 760 F.3d at 261 (quoting *George Basch*, 968 F.2d at 1539)). Importantly, these cases do not purport to apply New York law. "[C]harged with state law adjudication," the "ultimate source must be the law as established by the constitution, statutes, or authoritative court decisions of the state – and not federal courts' guesses as to what that law might be." *Borley v. United States*, 22 F.4th 75, 82 (2d Cir. 2021) (internal quotation marks omitted). New York law places considerable weight on the statute's express command that its awards be compensatory. *See* 15 U.S.C. § 1117(a); *Cox*, 237 N.Y. at 378–81; *Bogartz*, 293 N.Y. at 566 ("[S]uch is the plain requirement of the statute and that is an end of the controversy.").[2] That weight leads the Court to hold that New York would deem

---

[2] Parenthetically, it is unclear whether *George Basch* and *Merck*'s holdings remain good law. Animating these opinions is a notion overruled by recent Supreme Court precedent. *Compare Romag Fasteners, Inc v. Fossil, Inc.*, 140 S. Ct. 1492 (2020) (willfulness is not an "inflexible precondition to recovery" of disgorged profits), *with Merck*, 760 F.3d at 261 ("[A] finding of defendant's willful deceptiveness is a

Lanham Act disgorgement as, at the very least, partly compensatory and not purely punitive.

Because disgorgement under the Lanham Act is not purely punitive, this action does not implicate New York's public policy against insurance for punitive measures. With that public policy inapposite here, New York does not displace Georgia as the state with the most significant relationship to the transaction and the parties. Accordingly, Georgia law applies.

## II. SNCC Must Defend F&D

On November 14, 2019, SNCC took control of F&D's defense in the underlying suit subject to a reservation of rights, including the right to withdraw from the defense "should it be determined that [SNCC] has no obligation to indemnify [F&D] in" the underlying suit. Ex. 12 to Compl. After the Court issued the March 18, 2021 Order, SNCC observed the remedies sought by RVC could not be insured against under New York law, which nullified any obligation to indemnify F&D therefor. That is, SNCC applied New York law in interpreting its obligations under the policy. On this basis, SNCC withdrew from the defense. Ex. 13 to Compl.

Per the above analysis, however, Georgia supplies the law applicable to the interpretation of SNCC's policies. SNCC does not argue that Georgia public policy similarly bars its obligation to indemnify F&D as a result of the March 18, 2021 Order. Critically, and as SNCC acknowledges, Georgia law permits insurance

---

prerequisite for awarding profits." (quoting *George Basch*, 968 F.2d at 1539)); *George Basch*, 968 F.2d at 1537 ("[W]illfulness expressly defines the third rationale (deterrence) . . . for awarding profits.").

coverage for punitive damages. SNCC Opening Mem. at 10 n.3, 17 n.8. SNCC's basis for withdrawal is therefore invalid. SNCC therefore must continue its defense of F&D.[3]

## III. Remaining Issues

Because SNCC is not relieved of its duty to defend F&D, SNCC's request for reimbursement of costs incurred in defending F&D in Suit 1 is denied. *See* SNCC Opening Mem. at 14–15. For the same reason, SNCC's request for attorney's fees and costs paid to F&D to defend Suit 2 is denied. *See id.* at 18. Likewise, and as a result of the above analysis, the Court denies SNCC's request to dismiss F&D's First, Third, Second, and Fourth Affirmative Defenses. *Id.* at 19–22

## CONCLUSION

For the reasons discussed above, SNCC's motion for judgment on the pleadings is denied in its entirety because the March 18, 2021 Order does not relieve it of its duty to defend F&D in *RVC Floor Décor, Ltd. v. Floor and Décor Outlets of America, Inc.*, No. 2:18-cv-6449 (DRH) (ARL). F&D's motion for judgment on the pleadings is granted.

The Court, however, will not enter judgment at this time, as SNCC has "reserved and preserved the right to move for summary judgment" on the remainder of its causes of action.

---

[3]   In its motion, SNCC does not contend any contractual provision in the policy frees it of its coverage obligations. Nor does it contend any other aspect of Georgia law does the same.

**SO ORDERED.**

Dated: Central Islip, New York            s/ Denis R. Hurley
      May 27, 2022                                Denis R. Hurley
                                                               United States District Judge